## COTTEN *v.* HUGHES.

## Opinion delivered July 3, 1916.

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENT DISTRICT—DE FACTO
    COUNCIL.—By Legislative enactment it was attempted to raise the
    town of Benton, Saline County, to a city of the second class (Act 113,
    p. 277, Private Acts of 1911). The act was held invalid by this court
    in *Cotter* v. *Benton*, 117 Ark. 190. By Act 212, p. 831, Acts of 1915,
    the Legislature attempted to ratify and validate all municipal acts
    done under statutes raising their grades. *Held,* the acts of the mu-
    nicipal officers in creating a local improvement district and levying
    assessments, performed subsequent to the passage of Act 212, Acts
    of 1915, and before an election was held to elect new officers, were
    valid, that the district was legally formed, and the assessments levied
    were valid.

Appeal from Saline Chancery Court; *J. P. Henderson,*
Chancellor; affirmed.

*Hal L. Norwood,* for appellant.

1. Special Act 113, Acts 1911, was unconstitutional
and void. 117 Ark. 190. Special Act No. 212, Acts
1915, was also void. 185 S. W. 440. The City of Benton
was never even a *de facto* city of the second class. 55
Pac. 103; 106 Okla. 61; 92 N. E. 778; 175 Ind. 332; 136
Ill. App. 606; 88 N. E. 349; 43 Ind. App. 634; 73 N. E.
727; 35 Ind. App. 65.

2. There can be no *de facto* officer where there is
no office to fill. 118 U. S. 425; 28 Atl. 82; 18 N. W. 285;
31 Minn. 472; 29 S. E. 931; 103 Ga. 319; 61 S. E. 30;
4 Ga. App. 197. To constitute a *de facto* officer there
must be a rightful government. 26 Ark. 545, 580. See
also 24 Pac. 370.

3. Plaintiff is not estopped. 15 Pac. 825; 43 Ind.
566; 37 N. E. 739; 22 Mich. 104. There can be no
innocent purchasers of bonds issued without authority of
law. 10 R. C. L. 41; 123 N. C. 380; 51 Am. St. Rep. 824;
94 U. S. 260.

*Rose, Hemingway, Cantrell, Loughborough & Miles,*
for appellees.

1. It is immaterial whether the City of Benton is
treated as a *de jure* incorporated town or a *de facto* city

of the second class.    All have the same power to organize
improvement districts.    Its acts were valid.    I Dillon
Mun. Corp. (5th ed.), § 67, p. 122; 2 *Id.* § 887, p. 1368;
Cooley Const. Law (6th ed.), p. 309; 185 U. S. 1, 13.    The
case of 38 Ark. 81, is a leading case.    See also 54 *Id.* 374;
117 *Id.* 190.    The latter case has no bearing here.    Benton
was attempting to exercise powers belonging to a city of
the second class.    Here the incorporated town had the
power regardless of whether the act was void or not.

McCULLOCH, C. J.    Benton, the county seat of
Saline County, has been an incorporated town for many
years, and was organized under the general statutes of the
State, but the General Assembly of 1911 passed a special
statute attempting to raise its classification so as to con-
stitute it a city of the second class.    It was decided, how-
ever, by this court that the special statute was void for
the reason that it constituted a violation of those sections
of the constitution which provide that "the General
Assembly shall pass no special act conferring corporate
power," except in certain instances, and that the General
Assembly "shall provide by general laws for the organiza-
tion of cities and incorporated towns."    Art. XII, Sec-
tions 2 and 3, Constitution of 1874.    *Cotten* v. *City of
Benton*, 117 Ark. 190.

The decision declaring the special statute void was
rendered by this court on February 22, 1915, and the
General Assembly enacted a statute, which was approved
March 23, 1915 (Act No. 212, page 831, Acts of 1915),
attempting to ratify and validate all acts performed by
municipalities under special statutes raising their grades,
and also confirming in office the *de facto* officers in those
municipalities until an election could be held to elect
their successors.    The statute, after a recital in the
preamble to the effect that the grade of many incorporated
towns had been raised by acts of the Legislature to cities
of the second class, and that the Supreme Court had held
that all such special statutes were void, reads as follows:

"Section 1.    It is declared that the constituted gov-
ments of municipalities, which the Legislature has de-

clared to be cities of the second class, have been and are the *de facto* governments of such municipalities, and all their acts heretofore done, which would be valid if they were cities of the second class, or which would be valid if they were incorporated towns, are hereby ratified and confirmed, and declared to be valid as the acts of *de facto* governments; and, inasmuch as some time must elapse before a government can be organized in such municipalities as incorporated towns, the present officers of such municipalities are hereby confirmed in office until their successors are elected and qualified, and are hereby declared to be the *de facto* and *de jure* officers of said municipalities, and all their acts as such shall be valid until their successors have been elected and qualified in the manner hereinafter provided."

The second section of the statute directed the Governor, at the earliest practical date, to call a special election in all such municipalities for the purpose of electing a mayor, recorder, and five aldermen as the officers of said municipalities as incorporated towns. The section also provided how the election should be held, and the returns thereof made and declared, etc. The statute contained an emergency clause and therefore went into immediate effect.

On April 16, 1915, an ordinance was passed by the council creating an improvement district for the purpose of installing a system of water works, and appellees were appointed commissioners of the district, and on July 5, 1915, an ordinance was passed levying the assessments against the property in the district. The improvement was undertaken, and the assessments were levied, after obtaining the consent of the majority of the property owners of the district in accordance with the general statutes of this State with respect to improvement districts in cities and towns. Kirby's Digest, section 5664, *et seq.*

The only thing urged as a defect in the organization of the district is that all acts of the city council of Benton were absolutely void and that the Legislature had no authority to validate any acts which had already been

performed, nor to authorize any further acts to be performed by the city council. We need not concern ourselves at present with that part of the statute which undertook to validate acts which had already been performed by the council of Benton as a city of the second class, for, as has already been shown, everything that was done affecting the organization of this improvement district was done after the passage of the statute, and we need only consider that portion of the act which declared that "the present officers of such municipalities are hereby confirmed in office until their successors are elected and qualified, and are hereby declared to be the *de facto* and *de jure* officers of said municipalities, and all their acts as such shall be valid until their successors have been elected and qualified in the manner hereinafter provided."

Appellant is a property owner in the improvement district, and undertakes to restrain the Board of Commissioners from issuing bonds and carrying forward the construction of the improvement. The creation of the improvement district was entirely within the statutory power of an incorporated town, as much so as within the powers of cities of either class, and the Legislature did not attempt to confer any new power in authorizing the council to perform acts for and on behalf of the incorporated town. The only constitutional limitation upon the creation of improvement districts in cities and towns is that the special assessments for local improvements must "be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected," and that" such assessments shall be *ad valorem* and uniform." Art. XIX, Sec. 27.

Pursuant to that provision of the constitution, the Legislature provided by general laws for the organization of improvement districts in cities and towns, upon the consent being obtained of a majority in value of the owners of property to be affected. Nor is there any constitutional restriction upon the power of the Legislature with respect to determining how the corporate power conferred under general statutes shall be exercised, the only limitation being that contained in the two sections to the effect that

the General Assembly shall provide by general laws for the organization of cities and towns, and that "the General Assembly shall pass no special act conferring corporate power." All that the Legislature has done in the special statute now under consideration, so far as it relates to the question before us, is to declare that the corporate functions, pursuant to the original organization of the incorporated Town of Benton, should be exercised by the officers elected for the municipality as a city of the second class, and we are of the opinion that that statute does no violence to the constitutional authority of the lawmakers.

It must be remembered that the incorporated town ceased to exercise its functions through the agencies then existing, when the General Assembly of 1911 passed the statute raising the municipality to a city of the second class. The terms of those officers had expired when the Act of 1915 was passed and at most they could only have been deemed as holding over until their successors could be elected, and we see no constitutional objections to the Legislature providing other agencies, namely the officers which had been put into authority pursuant to the supposed power of the special act raising the municipality to that of a city of the second class, to execute the corporate authority until a new election could be held. The differences between the two classes of municipalities are purely statutory. An incorporated town has, under the statute, a mayor, a recorder and five aldermen, who constitute the city council, whereas the statute provides that the council of a city of the second class shall be composed of a mayor and two aldermen from each ward. While the members of the city council were elected under a void statute, and possessed no valid authority to act, yet it was within the province of the Legislature to authorize them to act for the incorporated town until the proper officers could be elected under general statutes. This was not an attempt to confer corporate authority by a special act. The authority was conferred under general statutes which provided for the organization of incorporated towns, and the Legislature in this special statute only designated the agencies through which that corporate

power, which had already been conferred, could be exercised.

We are of the opinion, therefore, that the acts of the city council in creating this improvement district and levying assessments, being acts that were performed subsequent to the passage of the statute of March 23, 1915, and before the election was held to elect new officers, it was a valid exercise of power, and that the improvement district has been legally created, and the assessments levied pursuant thereto are valid.

The chancellor was correct in his decree dismissing appellants' complaint for want of equity, and the decree is therefore affirmed.