FAUCETTE, MAYOR, *v.* GERLACH.

Opinion delivered January 21, 1918.

1. MUNICIPAL CORPORATIONS—IMPEACHMENT OF MUNICIPAL JUDGE—NATURE OF PROCEEDINGS.—The acts of a city council in impeaching a municipal judge are judicial in their nature, and where the accused has been granted a public hearing, and has been represented by counsel, it is proper for the council to retire and consider their verdict in secret.

2. MUNICIPAL CORPORATIONS—OFFICIAL ACTS OF DE FACTO JUDICIAL OFFICER.—The official acts of *de facto* judicial officers, within the scope of their jurisdiction are as valid and binding as the acts of *de jure* officers.

3. MUNICIPAL CORPORATIONS—IMPEACHMENT PROCEEDINGS—VALIDITY OF ACT OF DE FACTO ALDERMAN.—A city council undertook to impeach the municipal judge of the city, on account of misconduct in office. One R. had been duly elected alderman, and had qualified and had held the office and acted as alderman for some time. R.'s vote was necessary to sustain the impeachment. *Held,* R.'s acts as a *de facto* officer were valid, although in fact he was not a qualified elector of the city, he not having paid his poll tax.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; reversed.

*J. F. Wills, Robt. L. Rogers* and *R. E. Wiley,* for appellants.

1. Roberts was at least a *de facto* alderman, and his acts are valid and binding and can not be collaterally attacked. 38 Conn. 449; 9 Am. Rep. 409; 25 Ark. 336; 55 *Id.* 81; 1 Dillon, Mun. Corp. (4 ed.), § 276; 52 Mo. App. 540; 24 Wend. 520; 47 N. J. L. 383; 48 *Id.* 613; 10 Okla. 741; 54 L. R. A. 513; 131 Ky. 537; 115 S. W. 772; 61 Vt. 616; 49 Ark. 439; 3 Head (40 Tenn.) 690; 48 Me. 79; 96 Pa. 344; 121 N. W. 614.

2. The authority of a *de facto* officer can not be collaterally questioned. 118 U. S. 425; 105 Me. 224; 24 L. R. A. (N. S.) 408; 49 Ark. 439; 55 *Id.* 81; 61 Vt. 616; 48 Me. 79; 39 Am. Dec. 231-3-4; 14 Wash. 236; 23 N. Y. 293. Judicial officers are within the rule.

*A. Gerlach* and *Hal L. Norwood,* for appellee.

1. The cases cited do not apply. None of the reasons given in those cases exist in this case. 40 S. W. 650,

139 Mo. 106. Mr. Roberts was objected to before the trial because he was not an elector, and this is not a collateral attack.

2. The proceedings were secret, behind closed doors, and void. Kirby's Digest, §§ 5607, 1522.

STATEMENT OF FACTS.

This appeal involves the validity of impeachment proceedings against James Gerlach, judge of the municipal court of the city of Argenta.

In April, 1915, James Gerlach was elected judge of the municipal court of Argenta for a term of four years. On March 5, 1917, impeachment proceedings were instituted against him on the ground of drunkenness. On March 8, 1917, the city council of Argenta organized itself into a court of impeachment for the trial of Gerlach. Objection was made to Mord Roberts serving as a member of the court of impeachment because he was not a qualified elector. Roberts was duly elected and qualified as a member of the city council and had been acting as such since said election for a period of nearly two years at the time of the impeachment proceedings. He was not a qualified elector of the city of Argenta at the time of his election as such member of the council and since that time, because he had not paid his poll tax as required by the statute. On this account an objection was made to his sitting as a member of the court of impeachment. Mord Roberts voted for the impeachment of James Gerlach and without his vote the resolution impeaching Gerlach would not have received the vote of two-thirds of the members elected to the council as required by the statute. James Gerlach was impeached by the city council of Argenta and removed from the office of judge of the municipal court on March 8, 1917. On March 14, 1917, Gerlach filed in Pulaski Circuit Court a petition for *certiorari* against the mayor and council of Argenta for the purpose of quashing the impeachment proceedings. On final hearing the circuit court quashed the proceedings and from the judgment rendered this appeal is prosecuted.

HART, J., (after stating the facts). In the discussion of the validity of the acts of an officer *de facto* because of ineligibility, Judge Constantineau said:

"A person who enters into an office and undertakes the performance of the duties thereof by virtue of an election or appointment, is an officer *de facto,* though he was ineligible at the time he was elected or appointed, or has subsequently become disabled to hold the office." Indeed, it is settled by a current of authority almost unbroken for over 500 years in England and this country, that ineligibility to hold an office does not prevent the ineligible incumbent, if in possession under color of right and authority, from being an officer *de facto* with respect to his official acts, in so far as third persons are concerned. The reason of the rule is that "the eligibility of an officer is as difficult of ascertainment as his actual election, and sound policy requires that the public should be no more required to investigate the one than the other, before according respect to his official position." Constantineau on the De Facto Doctrine, § 151. On the same question Judge Cooley said:

"An officer *de facto* is one who by some color of right is in possession of an office and for the time being performs its duties with public acquiescence, though having no right in fact. His color of right may come from an election or appointment made by some officer or body having colorable but no actual right to make it; or made in such disregard of legal requirements as to be ineffectual in law; or made to fill the place of an officer illegally removed; or made in favor of a party not having the legal qualifications; or it may come from public acquiescence in the officer holding without performing the precedent conditions, or holding over under claim of right after his legal right has been terminated; or possibly from public acquiescence alone when accompanied by such circumstances of official reputations as are calculated to induce people, without inquiry, to submit to or invoke official action on the supposition that the person claiming the office is what he assumes to be." Cooley on Constitutional

Limitations (7 ed.), pages 897 and 898. Continuing, the learned author said: "But for the sake of order and regularity, and to prevent confusion in the conduct of public business and insecurity of private rights, the acts of officers *de facto* are not suffered to be questioned because of the want of legal authority except by some direct proceeding instituted for the purpose by the State or by some one claiming the office *de jure*, or except when the person himself attempts to build up some right, or claim some privilege or emolument, by reason of being the officer which he claims to be. In all other cases the acts of an officer *de facto* are as valid and effectual, while he is suffered to retain the office, as though he were an officer by right, and the same legal consequences will flow from them for the protection of the public and of third parties. This is an important principle, which finds concise expression in the legal maxim that the acts of officers *de facto* can not be questioned collaterally." *Ib.* 898.

Chancellor Kent said: "In the case of public officers, who are such *de facto* acting under color of office by an election or appointment not strictly legal, or without having qualified themselves by the requisite tests, or by holding over after the period prescribed for a new appointment, as in the case of sheriffs, constables, etc.; their acts are held valid as respects the rights of third persons who have an interest in them, and as concerns the public, in order to prevent a failure of justice." Kent's Commentaries, (14 ed.), Vol. 2, p. 295.

In *Mayo* v. *Stoneum*, 2 Ala. 390, the court held that the official acts of a judge *de facto* whose title to the office has not been adjudged insufficient are valid and irreversible. In that case it was assigned as error that the individual who presided at the term of the court when the judgment was rendered, though duly elected judge, was constitutionally ineligible at the time of his election.

In *McClendon, Mayor,* v. *State ex rel.*, 129 Ark. 286, 195 S. W. 686, this court held that the qualifications of *de facto* aldermen to serve could not be inquired into in a collateral proceeding, such as the city's mandamus suit

to compel the mayor to execute and sign a contract as directed by an ordinance passed over his veto by a vote to which the votes of the aldermen were essential.

In the case of *Lockhart* v. *City of Troy,* 48 Ala. 579, it was held that the official acts of a person disqualified to hold office by reason of his participation and aid to the Confederate States against the United States was not void, when such person holds his office under authority of the rightful government of the State, until after his right to the office is determined against him in some legal way. See also *Fancher* v. *Stearns,* 61 Vt. 616; *Hooper* v. *Goodwin,* 48 Me. 79; *Farrier* v. *State ex rel. Dugan,* 48 N. J. L. 613, 7 Atl. 881; *In re Collins,* 75 N. Y. App. Div. 87, 77 N. Y. Supp. 702; *Morford* v. *Territory,* 10 Okla. 741, 54 L. R. A. 513; *Johnson* v. *Sanders,* 131 Ky. 537, 115 S. W. 772.

In *State ex rel. Brockmeier* v. *Ely* (N. D.), 14 L. R. A. (N. S.) 638, the court, in discussing the validity of the acts of a *de facto* officer as to third persons and the public, held that by "third persons" is meant those persons having business of an official character with such officer, and not third persons in the usual legal sense in which the term is used.

The acts of the city council in relation to the impeachment of Gerlach were in the nature of judicial proceedings. The general rule is that the official acts of *de facto* judicial officers, within the scope of their jurisdiction, are as valid and binding as if they were the acts of *de jure* officers. Constantineau on the De Facto Doctrine, par. 422, and authorities *supra.* This rule was recognized by this court in *Keith* v. *State,* 49 Ark. 439.

Roberts was duly elected and qualified and was acting as alderman when he participated in the trial of Gerlach. His title to the office had not been questioned and had not been adjudged insufficient. He was recognized as a member of the council by the public. He was an officer *de facto,* and as such his acts were valid.

It is, also, contended that the impeachment proceedings were void because a part of the proceedings were secret. The record shows that Gerlach was given a pub-

lic hearing and had counsel to represent him. After the witnesses were examined and the matter was submitted to the council for its decision, the members retired into a private room for the purpose of deliberation. There was nothing wrong in this. As we have already seen, the impeachment proceedings were of a judicial nature, and it was entirely proper for the members of the council to retire for the purpose of considering their verdict.

It follows from what we have said that the circuit court erred in quashing the impeachment proceedings, and the judgment will be reversed and the petition of Gerlach for a writ of *certiorari* will be dismissed here.